VIA ECF

Re:   ***Pratyush Kohli v. Full Truck Alliance Co. Ltd., et al.***
      **Case No. 1:21-cv-03903-LDH-MMH (E.D.N.Y.)**

The Honorable LaShann DeArcy Hall
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Hall:

In accordance with Section III(A)(3) of Your Honor's Individual Practices, we respectfully submit this letter on behalf of Defendants Full Truck Alliance Co. Ltd. ("FTA"), Morgan Stanley & Co. LLC, China International Capital Corporation Hong Kong Securities Ltd., Goldman Sachs (Asia) LLC, UBS Securities LLC, Citigroup Global Markets Inc., and Nomura Securities International, Inc. (collectively, the "Underwriters")[1], Colleen A. De Vries, and Cogency Global Inc. (together with FTA and the Underwriters, "Defendants") to request a pre-motion conference regarding, or alternatively that the Court grant leave to file, their anticipated motions to dismiss the second amended complaint (the "SAC").

The SAC asserts claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The Defendants named in each of those claims intend to move to dismiss the SAC on the grounds that: (i) Plaintiffs fail to allege any material misrepresentation or omission, as required to state each of their claims; (ii) Plaintiffs cannot base a Securities Act claim on alleged misrepresentations in an underwriting agreement; (iii) Plaintiffs fail to plead a strong inference of scienter; and (iv) Plaintiffs' Section 15 and Section 20(a) claims fail because the underlying Section 10(b) and Section 11 claims are not well-pleaded.

**Factual Background**. FTA, a leading operator of digital freight platforms in China, completed an initial public offering of American Depositary Shares ("ADS") on June 22, 2021 (the "IPO"). (SAC ¶¶ 2–3, 43.) In its IPO registration statement and prospectus (the "Registration Statement"), FTA disclosed that a group of Chinese regulators, led by the Ministry of Transport, held two meetings in April and May 2021, respectively, with several companies, including FTA (the "Pre-IPO Meetings"), in response to which FTA submitted to the regulators and publicly announced a rectifying plan approximately a month before the IPO. (*Id.* ¶¶ 71, 99, 102.) Following the IPO, in early July 2021, the Cybersecurity Administration of China ("CAC"), one of the regulators that attended the Pre-IPO Meetings, announced a cybersecurity review of mobile applications operated by multiple U.S.-listed Chinese companies, including FTA. (*Id.* ¶ 80.) FTA's ADS price declined, and this lawsuit ensued. (*Id.*) Plaintiffs claim that the Registration Statement failed to disclose: (i) that FTA

---

[1] Defendants Huatai Securities (USA), Inc., China Renaissance Securities (Hong Kong) Limited, and CLSA Limited have not yet been served with the second amended complaint.

Hon. LaShann DeArcy Hall, U.S.D.J.                -2-

was ordered during the Pre-IPO Meetings to heighten the protection of users' personal information; (ii) that FTA defied that order; and (iii) a resulting imminent and known risk of regulatory penalties.  (*Id.* ¶¶ 98–106.)

   **Plaintiffs Fail to Allege a Material Misrepresentation or Omission**.  To state a claim under Section 10(b) or Section 11, Plaintiffs must allege a material misrepresentation or omission.  *See In re Alkermes Pub. Co. Sec. Litig.*, 523 F. Supp. 3d 283, 292 (E.D.N.Y. 2021).  The SAC fails to do so.

   As Plaintiffs allege in the SAC, the Registration Statement specifically disclosed the Pre-IPO Meetings: "Recently, [FTA], together with other industry players, w[as] requested to attend certain regulatory guidance meetings and subsequently, furnish materials concerning our business practices in user (particularly trucker) protection, pricing, competition, and other aspects to the relevant regulators for their review." (SAC ¶ 99.)  In addition, the regulators who held the Pre-IPO Meetings published official statements immediately after each meeting, fully describing the industry-wide issues discussed at the Pre-IPO Meetings and the regulators' request for improvement.

   Plaintiffs allege that FTA defied an order the regulators issued at the Pre-IPO Meetings regarding heightened protection of user information, but plead no facts showing that the regulators found any violation by FTA or that FTA was otherwise violating such an order when the Registration Statement became effective.  Notably, the official statements following the Pre-IPO Meetings did not reference any pending or potential investigation or any finding of legal violation.  The federal securities laws impose no obligation on FTA to disclose "uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014).  The fact that the CAC announced a cybersecurity review after the IPO (*see* SAC ¶¶ 76–80) does not mean that FTA had not complied with any prior order or that it had not "comprehensively upgrad[ed] platform safety protection measures," as FTA announced in its rectifying plan. *See, e.g., Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 393–94 (S.D.N.Y. 2014) (plaintiff "may not . . . state viable Section 11 claims by relying solely on hindsight to prove a misstatement").  Indeed, the CAC announcement makes no mention of the Pre-IPO Meetings or any data privacy violations by FTA. *See Gordon v. Tencent Music Entm't Grp.*, 2021 WL 9183821, at *4 (E.D.N.Y. Mar. 31, 2021) (dismissing Section 11 claim because, among other things, "[t]he Court is not altogether convinced that Plaintiff has plausibly pleaded that any government investigation was ongoing" before IPO).

   Moreover, the Registration Statement did not conceal the company's dealings with regulators on data privacy issues.  It expressly disclosed that FTA had "received notices from regulatory authorities that identified certain compliance defects in [its] data privacy and protections practices" and "adopted several remedial measures" in response to such notices, and "submitted [] rectification reports to the relevant governmental authorities." (SAC ¶¶ 99, 102.)  And far from guaranteeing that its rectification efforts would be deemed acceptable, FTA cautioned that (i) "any failure or perceived failure to comply with all applicable data privacy and protection laws and regulations" could result in "regulatory actions against us" and a potential material effect on FTA (*id.* ¶ 102) and (ii) "[t]here is no guarantee that such regulatory communications would not result in substantial penalties" (*id.*

Hon. LaShann DeArcy Hall, U.S.D.J.                    -3-

¶ 99).  As such, the Registration Statement "warned investors of exactly the risk [P]laintiffs claim was not disclosed."  *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 411 (S.D.N.Y. 2020).

**The Alleged Misrepresentations in the Underwriting Agreement Cannot Support A Securities Act Claim**.  Plaintiffs' attempt to base a Section 11 claim on contractual representations in the Underwriting Agreement fails for two reasons.  (SAC ¶¶ 105–06.) *First*, as discussed, the SAC fails to plead facts showing that the representations at issue— that FTA was not "in violation of any law [or] order" of "any government, regulatory body, administrative body, or other governmental body" (SAC ¶ 105)—were false.  *Second*, as a matter of law, an issuer's representations in an underwriting agreement cannot be the basis for Section 11 liability.  *See In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 638 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).  The plain language and framework of Section 11 shows that Congress intended to create liability only for misstatements in "any part of the registration statement[] when such part became effective," not for contractual representations that are not incorporated in the registration statement.  The form of Underwriting Agreement was only attached as an exhibit to FTA's Registration Statement, like several other contracts that also contain various contractual representations and warranties.  But the only aspect of an issuer's agreements with its underwriters that Congress chose to be incorporated in the body of a registration statement is the underwriters' compensation for the offering.  *See* 15 U.S.C. §§ 77aa(17).  Moreover, the representations and warranties at issue were made solely to and for the benefit of the Underwriters, and the Underwriting Agreement disclaimed third-party rights:  "[n]o purchaser of any of the ADSs from any Underwriter shall be deemed a successor or assign by reason merely of such purchase."

**Plaintiffs Fail to Plead Scienter**.  Both the Exchange Act claims and the sounding-in-fraud Securities Act claims fail for the independent reason that the SAC does not plead scienter.  *See In re Chembio Diagnostics, Inc. Sec. Litig.*, No. 20-CMV-2706 (ARR) (PK), 2022 WL 2872671, at *7 (E.D.N.Y. July 21, 2022) ("[C]ourts in this circuit have consistently . . . dismiss[ed] Securities Act claims that sound in fraud but fail to plead scienter.").  Plaintiffs speculate that FTA was motivated to rush its IPO in light of the heightened regulatory risk (*see* SAC ¶¶ 151–52), but they do not allege that the IPO would confer on the individual Defendants any "concrete and personal benefit," absent which the ordinary motive for a successful offering cannot support a strong inference of scienter.  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Nor do Plaintiffs allege that Defendants recklessly disregarded any information contradicting the challenged disclosures; indeed, the SAC includes no non-conclusory factual allegation showing that such information existed in the first place.

**Plaintiffs' Control Person Claims Fail As a Matter of Law**.  Plaintiffs' failure to plead a primary violation of the securities laws requires dismissal of their control person claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act.  *Shetty v. Trivago N.V.*, 796 F. App'x 31, 36 (2d Cir. 2019).

Hon. LaShann DeArcy Hall, U.S.D.J.                    -4-

 Respectfully,

 */s/ George S. Wang*
 George S. Wang
 SIMPSON THACHER &
 BARTLETT LLP
 425 Lexington Avenue
 New York, New York 10017-3954
 Telephone: 212-455-2000
 Facsimile: 212-455-2502
 gwang@stblaw.com

 *Counsel for Defendant Full Truck*
 *Alliance Co. Ltd.*

 */s/ Jonathan Rosenberg*
 Jonathan Rosenberg
 O'MELVENY & MYERS LLP
 7 Times Square
 New York, NY 10036
 Telephone: (212) 326-2000
 Facsimile: (212) 326-2061
 jrosenberg@omm.com

 *Counsel for Defendants Morgan*
 *Stanley & Co. LLC, China*
 *International Capital Corporation*
 *Hong Kong Securities Ltd.,*
 *Goldman Sachs (Asia) LLC, UBS*
 *Securities LLC, Citigroup Global*
 *Markets Inc., and Nomura*
 *Securities International, Inc.*

 */s/ Joanna A. Diakos*
 Joanna A Diakos
 K&L GATES LLP
 599 Lexington Avenue
 New York, New York 10022
 Tel.: (212) 536-3900
 Fax: (212) 536-3901
 joanna.diakos@klgates.com

 *Counsel for Colleen A. De Vries,*
 *and Cogency Global Inc.*

 cc:      All Counsel of Record