# The Rosen Law Firm

## I N V E S T O R   C O U N S E L

Jing Chen
jchen@rosenlegal.com

November 21, 2022

**VIA ECF**
Hon. LaShann DeArcy Hall, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza E.
Brooklyn, NY 11201

Re: ***Kohli v. Full Truck Alliance Co. Ltd., et al. - 2:21-cv-03903-LDH-MMH***

Dear Judge Hall:

On behalf of Plaintiffs, we respectfully respond to Defendants' requests for a pre-motion conference concerning anticipated motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Dkt. Nos. 50, 51. For the following reasons, Defendants' arguments on the adequacy of the Complaint's[1] claims under the Securities Act and Securities Exchange Act are meritless.

### A.    Defendants Materially Downplay Plaintiffs' Well-Pleaded Allegations.

Defendant Full Truck Alliance Co. Ltd. ("FTA") is a road logistics service company that operates a digital freight platform in China. ¶43. It connects customers in need of shipping services with truckers who provide those services. *Id*. FTA is like an "Uber for trucks." ¶2.

FTA provides its marketplace services through two apps named Yunmanman and Huochebang. Since its inception more than 10 years ago, FTA has amassed significant amounts of sensitive data concerning individuals, enterprises and China's geography and demographics. ¶45. To protect critical infrastructure information that FTA had gathered, the Cyberspace Administration of China ("CAC") and other regulators met with FTA to ensure that FTA was complying with China's regulatory regime concerning cybersecurity. ¶¶69,70. These meetings occurred in April and May 2021. *Id*.

Importantly, these meetings coincided with China's creation of two new cybersecurity laws, the Data Security Law and the Personal Information Protection Law. ¶¶63,64. These laws sought to ensure that sensitive data collected by Chinese companies would not be accessible outside of China. *Id*. Once enacted, Chinese companies subject to the laws would face significant difficulties operating in foreign jurisdictions, including listing their securities on U.S. exchanges. *Id*.

---

[1] Plaintiffs cite to the Second Amended Complaint, or the "Complaint," (Dkt. No. 36) as "¶_."

On June 22, 2021, FTA rushed to complete its over $1.5 billion initial public offering ("IPO") on the New York Stock Exchange before the enactment of the two laws. ¶76. In the registration statement, FTA vaguely disclosed that it had "certain regulatory guidance meetings" with regulators. ¶8. Such disclosure, however, omitted the material information  that these regulators had *already* cited FTA for potential cybersecurity regulatory violations and demanded that it "heighten the protection of users' personal information." ¶¶69,70. Moreover, FTA's registration statement and prospectus did not reveal that it refused to adhere to these regulatory demands and instead took zero action in response to them, thereby creating an imminent material risk of adverse regulatory action against FTA and its newfound investors. ¶¶71-75.

On July 5, 2022, the CAC announced a cybersecurity review targeting FTA's apps and suspended its new user registrations "in order to accommodate cybersecurity review and prevent the expansion of risks." ¶11. The announcement prompted an immediate decline in FTA's ADS price, wiping out nearly $4 billion in shareholder value. ¶12.

### B.    Plaintiffs Adequately Plead the Securities Act and Securities Exchange Claims.

The Complaint pleads claims under both Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act. Section 11 imposes strict liability whenever a registration statement "contain[s] an untrue statement of a material fact or omit[s] to state a material fact…necessary to make the statements therein not misleading[,]" which is a "relatively minimal" burden on the plaintiff as even innocent misstatements are actionable. 15 U.S.C. § 77k(a); *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 831-382 (1983). Securities Act claims are governed by Fed. R. Civ. P. 8 notice pleading standards. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,* 324 F. Supp. 2d 474, 502 (S.D.N.Y. 2004). Section 10(b) claims under the Exchange Act require more, including evidence of "scienter" and "loss causation." *Employees' Ret. Sys. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). The Section 15 and Section 20(a) claims provide for "control person" liability and hold officers and directors accountable for primary violations of the company. *Id*.

Plaintiffs' allegations sufficiently state a claim for relief under the relaxed pleading standard applicable to Section 11 under the Securities Act. FTA's statements in the registration statement and prospectus referenced its regulatory obligations yet failed to disclose that its non-action in response to regulators' demands had placed FTA at heightened risk. ¶¶74,75. That information was material and should have been disclosed accurately and completely. *See Christine Asia Co. v. Yun Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (reversing lower court dismissal where Chinese company failed to disclose regulatory risk following meetings with regulators). Even under Section 10(b) of the Exchange Act, Plaintiffs' allegations sufficiently state a claim for relief given that FTA and its senior officers knew and/or deliberately ignored the warnings it received from regulators during the April and May 2021 meetings. *See id*. (holding that attendance in meeting by high-level officers of company was sufficient to "plead strong circumstantial evidence of scienter"). ¶¶71-73. This is true even if, as Defendants incorrectly contend, Plaintiffs do not adequately plead "motive" allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) ("[T]he absence of a motive allegation is not fatal.").

THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827

Defendants overlook these allegations and the law, arguing instead that FTA's regulatory disclosures were sufficient in their own right under the federal securities laws. *See* Dkt. No. 50 at 2. Defendants are mistaken. The crux of Plaintiffs' claim is that Defendants failed to comply with black-letter law requiring them to "speak truthfully and accurately" once they "choos[e] to speak" on a particular topic. *See Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002); *see also Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) ("[B]y putting Orianna's rental payments 'in play,' Defendants were required to speak accurately and completely."); *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth."). In any event, the Court should not dismiss Plaintiffs' claims at the pleading stage on this basis alone, given that dismissal is only appropriate when an issuer's disclosure "discredit[s] the [allegedly misleading statement] so obviously that the risk of real deception drops to nil." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097 (1991).

Defendants also argue incorrectly that the Underwriter Defendants should be excused from liability because representations in their agreements with FTA are not actionable. Dkt. No. 50 at 3. Section 11 of the Securities Act explicitly identifies "underwriter[s]" as liable parties whenever a registration statement contains an untrue statement of material fact or omits to state a material fact required to be stated in order to make a statement not misleading. 15 U.S.C. §77k(a)(5). Furthermore, the persons and/or entities listed in Section 11 can be held liable whenever "*any part*" of a registration statement is misleading. This includes other documents that are "incorporated therein by reference" into the registration statement. 15 U.S.C. §77b(a)(8). FTA's registration statement expressly incorporated the underwriter agreements in question that contained the alleged false statements concerning the company's compliance efforts. *See* ¶105. Similarly, Section 11 of the Securities Act also lists "every person who signed the registration statement" as a potentially liable person under the statute, meaning that Defendant Colleen De Vries' argument is unsupported by the law. *See* Dkt. No. 51 at 1.

In light of the foregoing, Plaintiffs have adequately alleged all the elements necessary to state primary violations under both Section 11 and Section 10(b) and, therefore, have adequately alleged the prerequisites necessary to assert control-person liability claims under Sections 15 and 20(a). *See Blanford*, 794 F.3d at 305. This is true even for Ms. De Vries who appears to argue that she does not qualify as a "control person" in her role as Cogency Global Inc.'s Senior Vice President. *See* Dkt. No. 51 at 2. This argument, too, is contrary to the law stating that "the Court may find control where an officer or director has signed financial statements containing false or misleading statements." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 488 (S.D.N.Y. 2005).

Respectfully submitted,

/s/ Jing Chen
Jing Chen, Esq.

cc:    All counsel via ECF

THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686-1060 ♦ FAX: (212) 202-3827